IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PATRICK R. MCFADDEN,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | 8:23CV90<br><br>MEMORANDUM<br>AND ORDER |

  Plaintiff Patrick R. McFadden ("McFadden") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* He contends the Commissioner's final decision is "not supported by substantial evidence and [is] the product of legal error." Before the Court are McFadden's Motion for an Order Reversing the Commissioner's Decision (Filing No. 15) and the Commissioner's Motion to Affirm the Commissioner's Decision (Filing No. 18). For the reasons stated below, the Court affirms the denial of benefits.

I.  **BACKGROUND**

  McFadden suffers from Crohn's disease and depression. He has undergone multiple bowel resections due to Crohn's. When he was 50 years old, he protectively applied for disability benefits on June 29, 2020, alleging a disability beginning July 1, 2019. After the Social Security Administration ("SSA") denied his claim on initial review and reconsideration, McFadden requested an evidentiary hearing before an SSA administrative law judge ("ALJ"). *See* 20 C.F.R. § 404.929.

  Due to the COVID-19 pandemic, the ALJ held a telephonic hearing on February 17, 2022. McFadden was represented at the hearing by a non-attorney representative. McFadden and Steve Schill ("Schill"), an impartial vocational expert, both testified under

oath. After McFadden's representative acknowledged that McFadden performed substantial gainful activity from his alleged onset date to December 25, 2019, the ALJ amended the alleged onset date to December 26, 2019.

McFadden reported past work as a truck driver, floor-covering installer, carpenter laborer supervisor, rigger, and foamer. McFadden testified that ongoing issues with his bowels and his need to frequently use the bathroom caused work-related problems, including the loss of three different jobs. He also testified that when he was a truck driver, the lack of access to a bathroom forced him to carry a five-gallon bucket with a liner. Bouncing around in the truck also caused irritation that forced McFadden to go to the hospital for treatment.

McFadden testified he most recently drove a garbage truck part-time for the City of Randolph ("city") two days a week for seven hours a day. His condition did not cause him to miss work for that position but still required stops around town to use the bathroom. He reported he did have some accidents even within a month of the hearing due to sudden urgency and loose stools.

McFadden also described the depression caused by his medical situation and the stress he endures. He stated he gets treatment for his mental health every couple of weeks but that it does not affect his work driving for the city.

To fill the rest of his time, McFadden cleans his house, goes to the grocery store, and occasionally goes out to eat. His representative also noted McFadden spends a lot of time scheduling, traveling for, and receiving medical treatment.

After McFadden testified, the ALJ formulated a hypothetical, asking Schill to assume an individual with past work in the occupations that Schill had previously identified and the ability "to perform light work" that doesn't "require sustained exposure to concentrated extreme temperatures or vibration, and does not require exposure to hazards such as work at unprotected height." The ALJ added to the hypothetical that the person

could work in a setting with "typical access to a restroom such as found in work performed indoors."

The ALJ stated the person could "understand, remember, and persist at a consistent pace while performing tasks if they are simple, straightforward, and uncomplicated." The person was also "able to respond and behave appropriately without being distracted or distracting others when performing tasks so long as they do not require any more than incidental and superficial interaction with coworkers or the public."

Based on those parameters, Schill found the hypothetical person could not perform McFadden's past work. But that person could perform work as a photocopy machine operator, mailroom clerk, and sorter, all of which were available in significant numbers in the national economy.

On March 8, 2022, the ALJ determined McFadden met the insured-status requirements for disability coverage but did not qualify as disabled under the Act. McFadden appealed that adverse decision to the Appeals Council, which declined review. With that, "the ALJ's decision is the final decision of the Commissioner." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (quoting *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358 (8th Cir. 2022)). McFadden now seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g), maintaining he is entitled to benefits.

## II. DISCUSSION

### A. Standard of Review

In reviewing the Commissioner's final decision under § 405(g), the Court neither reweighs the evidence, *see Austin*, 52 F.4th at 731, nor retries the issues de novo, *see Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). Rather, the Court must "ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." *Schmitt*, 27 F.4th at 1358 (quoting *Combs v. Berryhill*, 878 F.3d 642, 645-46 (8th Cir. 2017)); *see also Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021)

("The ultimate issue on appeal is whether there is substantial evidence in the record as a whole to support the ALJ's denial of [the plaintiff's] claim for benefits.").

"'[S]ubstantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. ___, ___, 139 S. Ct. 1148, 1154 (2019). Despite its weighty name, the threshold for substantial evidence "is not high." *See id.*, 139 S. Ct. at 1154 ("Substantial evidence . . . is 'more than a mere scintilla.'" (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))); *accord Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023). It "is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "[I]f supported by substantial evidence," the Commissioner's factual findings are conclusive. 42 U.S.C. § 405(g).

The Court's review for substantial evidence "is not one sided." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020). It considers the record as a whole, reviewing "both evidence that detracts from the decision and evidence that supports it." *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024) (quoting *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011)). Still, the Court will not reverse the denial of benefits merely because substantial evidence could support a different outcome. *Id.* It will only reverse if the ALJ's decision "falls outside the available zone of choice." *Id.* (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021)). "If, after review, [the Court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ]'s findings, [the Court] must affirm the denial of benefits." *Wiese*, 552 F.3d at 730 (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

### B. Eligibility for Disability Benefits

To qualify for disability benefits under the Act, McFadden must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A); *accord Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The disability, not the impairment, must be continuous for at least twelve months. *See Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993). McFadden is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The work need not exist "in the immediate area where he lives" nor relate to "a specific job vacancy." *Id.*

In determining "whether a claimant is under a disability," the Commissioner follows the familiar "five-step, sequential process" set forth in the implementing regulations. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019); *see also* 20 C.F.R. § 404.1520(a). Under that process, the ALJ considers the following:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals [a listed impairment]; (4) whether the claimant can return to [his] past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). The claimant bears the burden of showing he "is disabled through step four; at step five, the burden [of production] shifts to the Commissioner to show there are other available jobs in the economy." *Id.*; *see also Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Steps four and five require the ALJ to assess the claimant's residual functioning capacity ("RFC"), *see Moore*, 572 F.3d at 523, which is the most the claimant "can still do despite [his] limitations," 20 C.F.R. § 404.1545(a)(1). The ALJ "must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "If it can be determined

5

that a claimant is not disabled at a step, the ALJ does not need to continue to the next step." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.152(a)(4)).

Applying this five-step process to McFadden's claim, the ALJ determined he "has not engaged in substantial gainful activity since December 26, 2019"—his alleged onset date as amended at the hearing. *See* 20 C.F.R. §§ 404.1520(b), 404.1571, 404.1572(a)-(b). The ALJ listed "inflammatory bowel disease (Crohn's disease) and depressive disorder" as severe impairments for McFadden but determined his "impairments, singly or in combination," did not meet or medically equal a listed impairment. *See id.* §§ 404.1520(c)-(d), 404.1525, 404.1526.

After carefully considering "the entire record," the ALJ decided McFadden "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)" with some limitations, including that the work neither "require sustained exposure to concentrated extreme temperatures or vibration" nor "exposure to hazards such as work at unprotected height." *See id.* § 404.1520(e). The ALJ further found McFadden "is able to perform work in a setting with typical access to a restroom such as found in work performed indoors."

With respect to mental impairments, the ALJ determined McFadden could "understand, remember, and persist at a consistent pace while performing tasks that are simple, straightforward, and uncomplicated. He is able to exercise proper judgment in performing those tasks and to respond appropriately to routine changes in the workplace and to routine supervision." The ALJ additionally found McFadden "is able to respond and behave appropriately without being distracted or distracting others when performing tasks that do not require more than incidental and superficial interaction with co-workers or the public."

Having examined the medical evidence and McFadden's hearing testimony, the ALJ concluded McFadden's "medically determinable impairments could reasonably be

6

expected to cause [his] alleged symptoms" but not necessarily to the degree of "intensity, persistence and limiting effects" that McFadden described. The ALJ acknowledged his long history of Crohn's disease but found McFadden's allegations about "the frequency and urgency of" his bowel movements were "not consistent with the record medical and other evidence," including medical notes that do not contain any "reports of the extreme incontinence he alleges."

In particular, the ALJ noted physician assistant Jill Connealy ("P.A. Connealy") physically examined McFadden in February 2021. The ALJ determined P.A. Connealy's notes indicated that McFadden reported that bowel urgency—not bowel incontinence—limited his ability to work and had caused him to lose work in the past.[1] The ALJ also noted some improvement in McFadden's reports regarding the frequency of his bowel movements.

Based on his review of the record as a whole, the ALJ determined McFadden could work "in a setting with typical access to a restroom." He concluded that finding was further supported by McFadden's testimony to the effect that he was able to perform his part-time work for the city without having to miss work because he could "address urgency by stopping when necessary" and only had "to interrupt his duties about once a week to attend to his bowel condition." Given that, the ALJ thought it logical that McFadden could work in a setting with a restroom nearby.

Turning to McFadden's mental impairments, the ALJ found "the record medical evidence supports that he experiences mental health symptoms that impose significant work-related limitations." More specifically, the ALJ relied on the clinical observations of Mark Nelson, Ed.D. ("Dr. Nelson"), with respect to McFadden's "minimal eye contact,

---

[1]The ALJ considered P.A. Connealy's "observations and findings" but stated she "did not provide a medical opinion" and made "no statements as to the presence or absence of specific functional limitations."

7

tearfulness, irritability, deficits in insight and judgment, problems coping with his physical condition and adjusting to changes, and difficulty interacting appropriately with others largely in relation to Crohn's disease."

The ALJ found "Dr. Nelson's opinion somewhat persuasive" because it was "supported by his observations and findings of mental status abnormalities and functional deficits." *See* 20 C.F.R. § 404.1520c (explaining how the Commissioner considers and articulates medical opinions and prior administrative medical findings for claims filed after March 27, 2017). Yet, the ALJ determined Dr. Nelson's opinion was "not entirely consistent with other evidence in the record," such as treatment notes from P.A. Connealy and other providers that did not show the "abnormal behavior and interaction" Dr. Nelson described in his report.

Moving to steps four and five, the ALJ determined McFadden is unable to perform his past relevant work as a truck driver and carpenter laborer supervisor. *See* 20 C.F.R. § 404.1565. However, in light of Schill's testimony and McFadden's "age, education, work experience," and RFC, the ALJ concluded McFadden "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *See id.* §§ 404.152(g), 404.1569, 404.1569a. Accordingly, he concluded McFadden "is not disabled under" the Act.

    **C.    Issues on Review**
        **1.    Substantial Evidence for McFadden's RFC**

McFadden first argues "[t]he ALJ erred by failing to support the absence of adequate limitation for [McFadden's] inflammatory bowel disease/Crohn's disease with substantial evidence despite assessing it as a severe impairment at step two." As McFadden sees it, the ALJ's determination that McFadden had the RFC to perform light work with adequate access to a restroom "is not supported by substantial evidence because in formulating the RFC, he failed to properly account for [McFadden's] bowel urgency with resulting need

8

for frequent bathroom breaks." He further argues the ALJ failed to "offer a proper explanation for said omission from the RFC."

McFadden acknowledges that "[i]t is the ALJ's duty"—not the Court's—"to resolve conflicts in the evidence." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007). He further acknowledges that the ALJ specifically addressed McFadden's reported incontinence, finding that "the record medical evidence" and McFadden's testimony about his most-recent part-time work as a truck driver for the city did not support finding he was unable to perform light work with reasonable limitations.

Yet McFadden contends remand is required here because, in his view, "the ALJ mischaracterized the record by finding that [McFadden] testified he is able to manage his bowel urgency without complication during his current part-time employment." McFadden states that he "testified that even in his current part-time job, he has to stop while driving the truck and use the bathroom around town" and "reported that his bowel urgency causes him to not make it to the bathroom in time *on almost a daily basis*." (Emphasis in original.) McFadden's arguments are unavailing.

To start, the ALJ never said McFadden was "able to manage his bowel urgency *without complication*." Instead, he determined McFadden's inflammatory bowel disease was a severe impairment that significantly limited McFadden's "ability to perform basic work activities." The ALJ specifically noted some of the difficulties that impairment caused that McFadden now raises, including the frequent stops McFadden had to make and his incontinence. After examining the medical evidence and McFadden's hearing testimony, the ALJ nonetheless determined McFadden's allegations about "the frequency and urgency of [his] bowel movements" were not entirely consistent with the balance of the record. In his brief, McFadden points to his testimony about "daily" issues, but at the hearing before the ALJ, he clarified at the hearing that his "daily" issues were when he was driving truck and that it didn't "happen near as often" since he has been home and "close to the bathroom all the time."

9

In determining McFadden's RFC, the ALJ also drew a reasonable distinction between bowel urgency and incontinence. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam) (stating that in conducting its "limited and deferential review of the final agency determination under the substantial-evidence standard," the Court "must view the record in the light most favorable to that determination" and "strive to harmonize statements where possible"). Based on his review of the record, he found that limiting McFadden to light work that had typical access to a restroom would sufficiently address the ALJ's careful assessment of McFadden's impairments. Deferring "heavily to [the ALJ's] findings and conclusions" as to McFadden's RFC, the Court is satisfied "'that a reasonable mind would find'" them adequately supported by the record as a whole. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *McKinney*, 228 F.3d at 863).

McFadden faults the ALJ for considering his testimony about his part-time work for the city and suggests the ALJ should have given more weight to other evidence that McFadden finds more persuasive. As he sees it, "an unbiased review documents the bowel frequency and urgency" he alleges.[2]

But McFadden does not cite to any authority that establishes that it was improper or unsound for the ALJ to consider his part-time work in determining his RFC. To the contrary, he admits the ALJ must determine his "RFC based on *all of the relevant evidence*, including . . . [McFadden's] own description of his limitations." *McKinney*, 228 F.3d at 863 (emphasis added). As the Commissioner points out, that includes any testimony about the claimant's part-time work and other daily activities. *See Harris v. Barnhart*, 356 F.3d

---

[2]McFadden does not formally allege the ALJ was biased—for good reason. The ALJ is "presumed to be unbiased" and honest. *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011) (quoting *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)). The vague and unsupported aspersion of bias McFadden casts does absolutely nothing to rebut that presumption. *Id.* at 902-03 ("A claimant bears the burden of producing sufficient evidence to overcome this presumption.").

10

926, 930 (8th Cir. 2004) (concluding it was reasonable for the ALJ to consider the claimant's "daily activities, including part-time work," in evaluating her claim).

With all of this in mind, the Court finds that the ALJ did not mischaracterize the record. He considered all the relevant evidence in determining McFadden's RFC and adequately explained his reasoning. *See Grindley*, 9 F.4th at 631 ("An ALJ's reasoning need only be 'clear enough to allow for appropriate judicial review.'" (quoting *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019))). McFadden obviously disagrees with the ALJ's evaluation of the evidence and urges a different outcome, but that is not the Court's role. *See*, *e.g.*, *Travis*, 477 F.3d at 1041; *Dols v. Saul*, 931 F.3d 741, 749 (8th Cir. 2019) (noting courts should not reverse simply because some evidence supports a different outcome). "Whether the ALJ should have provided *additional* limitations amounts to a disagreement over the weighing of evidence within the record, and 'it is not this Court's role to reweigh that evidence.'" *Austin*, 52 F.4th at 731 (quoting *Schmitt*, 27 F.4th at 1361).

In sum, substantial evidence supports the ALJ's determination of McFadden's RFC. *See id.*

### 2. Medical Opinions

McFadden next argues "[t]he ALJ failed to evaluate the medical opinions of [P.A. Connealy] and [Dr. Nelson] in accordance with the prevailing rules and regulation, resulting in a determination that is the product of legal error." He further argues, "The ALJ's RFC determination is not supported by substantial evidence because in formulating the RFC, he failed to properly evaluate the opinions of record." McFadden again fails to raise sufficient grounds to reverse the ALJ's decision.

As the ALJ noted in his decision, McFadden's disability claim is subject to the revised regulations for evaluating the persuasiveness of medical opinions. *See Austin*, 52 F.4th at 728; 20 C.F.R. § 404.1520c. Under those regulations, "ALJs evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by

objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). Supportability and consistency "are the most important" factors. *Id.* (citing 20 C.F.R. § 404.1520c(a)).

McFadden first takes issue with the ALJ's statements that (1) P.A. Connealy did not give a medical opinion and (2) the ALJ considered "[h]er observations and findings . . . but she made no statements as to the presence or absence of specific functional limitations." McFadden again accuses the ALJ of mischaracterizing the record. As he sees it, P.A. Connealy "effectively assessed [McFadden] with a limitation in off-task behavior and excessive absence—finding that [he] suffers from chronic diarrhea and bowel urgency as a result of his condition, *limiting his ability to work efficiently and hold a job*." McFadden contends, "The ALJ erred by disregarding this opinion and failing to assess its supportability and consistency as required by the governing regulations."

McFadden's argument is largely built on the faulty premise that the ALJ disregarded P.A. Connealy's "opinion" in determining McFadden's RFC.[3] In his written decision, the ALJ expressly stated that he considered P.A. Connealy's observations and findings; he then addressed them in determining McFadden's RFC. *See Kraus*, 988 F.3d at 1025 (concluding an "ALJ did not completely disregard" an opinion where the ALJ "reviewed all the material for a holistic view of [the claimant's] health" and incorporated some of the medical provider's analysis into the determination of the claimant's RFC). Notwithstanding

---

[3]The Court notes that the applicable "regulations define a 'medical opinion' as 'a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions' related to the mental or physical demands of work." *Austin*, 52 F.4th at 729 n.3 (quoting 20 C.F.R. § 404.1513(a)(2)). Under § 404.1513(a)(3), "[m]ere diagnostic statements or 'judgments about the nature and severity of . . . impairments' are not 'medical opinions'" and are "not subject to 20 C.F.R. § 404.1520c." *Austin*, 52 F.4th at 729 n.3 (second alteration in original). The parties don't say much about this particular issue.

12

McFadden's suggestion to the contrary, the ALJ's RFC determination specifically accounts for McFadden's diarrhea and bowel urgency and their impact on his ability to work, even if not to the degree McFadden wanted. *See Austin*, 52 F.4th at 729 (stating an "ALJ is free to accept some, but not all, of a medical opinion").

McFadden's use of the word "effectively" to describe his characterization of P.A. Connealy's statement is telling. He neither provides record support for that interpretation nor shows where the ALJ was wrong in saying P.A. Connealy did not offer a medical opinion as to any "specific functional limitations" McFadden has. *See KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 371 (8th Cir. 2016) (concluding an ALJ properly discounted a medical opinion that failed to identify "specific functional limitations").

To the extent the ALJ erred in saying P.A. Connealy didn't offer a "medical opinion" or in failing to analyze the persuasiveness factors more-thoroughly (and he certainly could have said more), the Court finds those errors are harmless in these circumstances. *See Austin*, 52 F.4th at 729 n.3 (finding "that the ALJ's persuasiveness analysis was legally sufficient and any legal error was harmless"); *Grindley*, 9 F.4th at 631 ("The ALJ's brevity is not reversible error."); 20 C.F.R. § 404.1520b(c)(3) (providing that statements on issues reserved to the Commissioner, such as statements that a claimant is or is not disabled, "able to work, or able to perform regular or continuing work," are "inherently neither valuable nor persuasive").

McFadden's challenge to the ALJ's review of Dr. Nelson's opinion likewise falls short. As noted above, the ALJ found "Dr. Nelson's opinion somewhat persuasive" and included some of his findings with respect to mental and social limitations in McFadden's RFC. The ALJ concluded Dr. Nelson's opinion was "supported by his observations and findings of mental status abnormalities and functional deficits." Turning to consistency, the ALJ discounted the opinion some because "it was not entirely consistent with other evidence in the record," including P.A. Connealy's observations and other contemporaneous treatment notes documenting McFadden's mood and behavior.

13

McFadden contends the ALJ "performed a cursory and legally insufficient analysis of" Dr. Nelson's opinion. In particular, he criticizes the ALJ's supportability and consistency analyses.

While the Court again agrees with McFadden that the ALJ could have said more, it nevertheless concludes the ALJ's analysis is legally sufficient in these circumstances and supported by substantial evidence. *See Ross*, 92 F.4th at 778-79. All things considered, "the ALJ adequately considered the persuasiveness of" Dr. Nelson's opinion under § 404.1520c(c) by addressing its supportability and consistency. *Austin*, 52 F.4th at 728-29. He gave sound reasons for crediting some of those opinions and discounting others—namely with respect to "abnormal behavior and interaction." *See id.* at 729 (concluding "the ALJ committed no legal error in evaluating [a medical] opinion and finding that it supported the RFC assessment"); *Kraus*, 988 F.3d at 1026 ("The ALJ's decision was appropriate and sufficiently explained.").

McFadden contends the ALJ should not have relied on P.A. Connealy's observations at all in assessing Dr. Nelson's opinion because her physical examination had a different purpose than Dr. Nelson's mental examination. While true, that difference is not necessarily determinative, particularly where the limitation at issue is not a technical one or dependent on specialized training but instead relates to McFadden's reported difficulties with social interactions and behavior. *See* 20 C.F.R. § 404.1520c(c).

McFadden again points to other evidence that was "in fact consistent" with "the limitations assessed by Dr. Nelson" that he contends the ALJ did not meaningfully consider. But an ALJ need not "'explicitly . . . reconcile every conflicting shred' of medical evidence." *Austin*, 52 F.4th at 729 (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). And an ALJ's "failure to cite specific evidence does not indicate that such evidence was not considered." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (explaining "an ALJ is not required to discuss every piece of evidence submitted"). Despite his framing, in the end, McFadden's arguments about Dr. Nelson's opinion essentially boil down to an

14

assertion that the ALJ improperly weighed the evidence and reached the wrong conclusion by failing to include additional limitations in his RFC. *See Austin*, 52 F.4th at 731. Again, that is not proper grounds for reversal in this case. *See id.*; *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) ("[T]his court may not reverse the decision of the ALJ merely because substantial evidence may allow for a contrary decision.").

### III. CONCLUSION

After careful review of the administrative record and the parties' submissions, the Court finds the Commissioner's denial of McFadden's application for disability benefits is legally sound and "supported by substantial evidence in the record as a whole." *Ross*, 92 F.4th at 778 (quoting *Kraus*, 988 F.3d at 1024). Accordingly,

IT IS ORDERED:

1. Plaintiff Patrick R. McFadden's Motion for an Order Reversing the Commissioner's Decision (Filing No. 15) is denied.
2. The Commissioner's Motion to Affirm the Commissioner's Decision (Filing No. 18) is granted, and the decision denying benefits is affirmed.
3. McFadden's Complaint (Filing No. 1) is dismissed with prejudice.
4. A separate judgment will issue.

Dated this 11th day of March 2024.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge